**BROWNING KING CO. OF NEW YORK, Inc. v. BROWNING KING & CO., Inc., et al.**

**Civil Action No. 2420.**

District Court, E. D. Pennsylvania.
March 29, 1948.

See also, D.C., 5 F.R.D. 386.

Bernard Eskin, Abraham L. Freedman, and Wolf, Block, Schorr & Solis-Cohen, all of Philadelphia, Pa. (George Trosk, of New York City, of counsel), for plaintiff.

Frank Fogel, and A. D. Caesar, of Caesar & Rivise, all of Philadelphia, Pa., for defendant.

BARD, District Judge.

This is an action brought by the plaintiff to restrain the defendants from using the trade-name "Browning, King," and its variations, and certain trade-marks, and from engaging in unfair competition.

On the basis of the pleadings and the testimony, I make the following special

### Findings of Fact.

1. Plaintiff, The Browning King Co. of New York, Inc., is a corporation organized under the laws of the State of New York on June 25, 1934, with its principal office and place of business located in New York, New York.

2. The defendant, Browning King & Co., Inc. (hereinafter referred to as "corporate defendant"), is a corporation organized under the laws of the Commonwealth of Pennsylvania in 1940, and has its principal office and place of business in the City of Philadelphia, Pennsylvania.

3. The defendant, A. Benjamin Wilkes, is president of the corporate defendant.

4. Defendant, Joseph Wilkes, is vice president of the corporate defendant.

5. Defendants A. Benjamin Wilkes and Joseph Wilkes are residents and citizens of the Commonwealth of Pennsylvania.

6. Plaintiff is engaged in the retail men's clothing business, having four stores, two in New York, N. Y., another in Brooklyn, New York, and the fourth in Newark, New Jersey.

7. The corporate defendant is engaged in the sale of men's clothing, and operates three stores in Philadelphia, Pennsylvania.

8. Prior to the incorporation of both the plaintiff and defendant corporations, there existed a Delaware corporation known as Browning, King & Co. (hereinafter referred to as the "Delaware corporation").

9. The Delaware corporation went into bankruptcy in May, 1934, and its assets were offered at a sale held in New York City in June, 1934.

10. When it went into bankruptcy the Delaware corporation owned and operated directly retail clothing stores in New York City, Brooklyn, New York, Ithaca, New York, and New Haven, Connecticut, and a uniform and custom-made department in New York City.

11. When the Delaware corporation went into bankruptcy, it also owned all of the issued and outstanding stock of the following corporations, each of which operated the retail clothing stores specified:

13. In connection with its sale of men's and boys' clothing, the Delaware corporation and its wholly owned subsidiaries also used the trade-marks "Challenger," "Conqueror," and a triangle containing the letters "B. K. & Co.," which were attached to various classes of merchandise in order to enable the purchasing public to identify the grade or quality thereof. The Delaware corporation also used a symbol (hereinafter referred to as the "House Insignia") as a means of identifying its merchandise.

14. Plaintiff is the assignee of Jennie Hilton, who was the assignee of A. & C. Clothes, Inc., which, through its agent, Maurice L. Shaine, purchased the right to use the Browning, King trade-marks and trade-name in New York, exclusive of Ithaca, at the bankruptcy sale of the Delaware corporation.

15. Plaintiff is also the assignee of Jennie Hilton, who was the assignee of Associated Merchandise Company, which purchased the right to use the Browning, King trade-marks and trade-name in the State of New Jersey at the bankruptcy sale of the Delaware corporation.

| Name of Corporation | Cities in which Store was Operated |
| --- | --- |
| Browning, King & Company, Inc. | Boston, Massachusetts; Cambridge, Massachusetts; and Providence, Rhode Island. |
| Browning King & Co. of Philadelphia, Inc. | Philadelphia, Pennsylvania. |
| Browning King & Co. of Cincinnati, Inc. | Cincinnati, Ohio |
| Browning King & Co. of Milwaukee, Inc. | Milwaukee, Wisconsin |
| Browning King & Co. of Omaha | Omaha, Nebraska |
| Browning King & Co. of New Jersey | Princeton, New Jersey |
| Browning King & Co. of Minnesota | St. Paul, Minnesota, and Minneapolis, Minnesota |

12. All of the stores operated by the Delaware corporation or its subsidiaries were operated under the name "Browning, King & Co." and the merchandise sold therein had the name "Browning, King & Co." or "Browning, King" stamped, printed or affixed thereto as a trade-name or trade-mark.

16. The corporate defendant is the assignee of the defendant, A. Benjamin Wilkes, who was the assignee of Samuel Mogelewsky, who purchased the right to use the Browning, King trade-marks and trade-name at the receivership sale in

Philadelphia, Pennsylvania on July 2, 1934 of Browning, King & Co. of Philadelphia, Inc., one of the wholly owned subsidiaries of the Delaware corporation. The assets of Browning, King & Co. of Philadelphia, Inc., had been previously offered for sale at the bankruptcy sale of the Delaware corporation, but the bid for these assets was refused by the referee in bankruptcy for the Delaware corporation because the bid was too low. Thereupon the assets were ordered to be resold in Philadelphia pursuant to an agreement between the trustee in bankruptcy for the Delaware corporation and the trustee in the equity receivership of the Philadelphia subsidiary in Common Pleas Court of Philadelphia.

17. Plaintiff assumed the operation of the stores it had acquired as a result of the bankruptcy sale as going concerns, using and employing in so far as possible the same employees and the same type of merchandise, occupying the same locations, and pursuing the same price policies and methods of doing business as its predecessor had employed.

18. Plaintiff has continued to operate the stores in Brooklyn and New York City up until the present time, and during the period of its operation of these businesses it has used the name "Browning, King," and the trade-marks and trade-name acquired from the trustee in bankruptcy.

19. In 1937, plaintiff opened an additional store at 241 Broadway, New York City, and in 1939, an additional store in Newark, New Jersey. Both of these stores were operated and are presently being operated in the same manner and selling the same merchandise as the other stores operated by the plaintiff.

20. Plaintiff in its business of the sale of clothing has continuously used the trade-marks "Conqueror" and "Challenger," and the house insignia.

21. Plaintiff has extensively advertised its merchandise through the media of newspapers, magazines, direct mail, window displays and other means. Since February 1, 1940, plaintiff has expended a total of $576,804.45 in advertising in newspapers alone.

22. The total sales of the plaintiff amounted to $3,400,000 in the year 1946, as compared with total sales of $1,200,000 for the year 1940.

23. The great bulk of plaintiff's business is transacted with residents of New York City. Of a total of 2,500 charge customers, plaintiff has approximately 126 charge account customers in Pennsylvania, and approximately 800 charge account customers who reside outside the States of New York, New Jersey and Pennsylvania.

24. On October 2, 1940, defendant Joseph Wilkes registered the name "Browning, King Manufacturing Co." in the office of the Prothonotary of the Courts of Common Pleas of Philadelphia County, and in the office of the Secretary of the Commonwealth at Harrisburg, Pennsylvania.

25. At or about December, 1940, the corporate defendant began to operate two retail stores at Chelten and Green Streets and 6316-18 Woodland Avenue, in the City of Philadelphia, Pennsylvania, and began to sell at retail and wholesale men's and boys' clothing under the trade-name and trade-marks "Browning, King & Co." and "Browning King," and also to use in connection with its business the trade-marks "Challenger", "Conqueror," the triangle containing the letters "B. K. & Co.," and the house insignia.

26. At the present time the corporate defendant operates stores in Philadelphia at 227 North Broad Street, 16th and Chestnut Streets, and 63 West Chelten Avenue. The defendants have also caused to be opened and operated stores in Miami, Fort Lauderdale and St. Petersburg, Florida. At all of these stores clothing is sold under the trade-name "Browning, King" and under the trade-marks "Challenger" and "Conqueror."

27. Plaintiff in August, 1936 adopted and has since used in its business, the trade-mark "Windsor House" as a brand name for a line of its clothing. This trade-mark had not been adopted nor had it been used by the predecessor Delaware corporation.

28. In 1940, the corporate defendant adopted, and has since used, the name "Windsor Hall" in connection with the

sale of a line of its clothing, and has used this name on labels and advertising. The adoption and use of the name "Windsor Hall" by the corporate defendant was with knowledge of plaintiff's use of the name "Windsor House" and with intent to imitate the latter and to trade upon the value of that name. The name "Windsor Hall" is deceptively similar to "Windsor House."

29. The corporate defendant caused to be inserted in the November, 1942 issue of "Esquire" magazine an advertisement identifying the name "Browning, King" with Philadelphia, and giving prices for various brands of clothing, including "Challenger," "Conqueror" and "Windsor Hall," which prices were substantially higher than the prices actually charged by the corporate defendant in its stores. This advertisement also gave the locations of the corporate defendant's stores in Philadelphia and Norristown, preceded by the statement "Factory Showrooms in the East."

30. After the insertion of the aforementioned advertisement in "Esquire" Magazine, the defendants began an extensive advertising campaign in Philadelphia newspapers, calling attention to the "Esquire" advertisement, and pointing out that the prices charged in the defendant's stores were "factory showroom prices" which were substantially less than the "nationally advertised prices." This advertising scheme was calculated to create in the minds of the purchasing public the impression that the same clothing which was sold on a nation wide scale at higher retail prices could be purchased at the Philadelphia Browning, King stores at substantially lower prices because, in Philadelphia, the clothing could be purchased directly from the manufacturer.

31. The corporate defendant has advertised, and still advertises, by large signs permanently displayed on its stores and in its show windows, that its establishments are "factory showrooms."

32.. The corporate defendant has implemented its advertising campaign by attaching to the articles of clothing in its stores a price tag which states two different prices. The larger part of the tag states a price which is substantially higher than the price stated on the smaller portion of the tag, which is separated by a perforation. The price stated below the perforation is designated "factory showroom price."

33. The aforementioned advertising of the corporate defendant is false and misleading in that the (a) "nationally advertised prices" are fictitious, (b) "factory showroom prices" are ordinary retail prices, and the corporate defendant is not a manufacturer of clothing and has not sold its clothing at manufacturers' or wholesale prices. Its stores are ordinary retail stores and are not adjuncts of any manufacturing establishment.

### Discussion.

The plaintiff's claim for relief in the instant case is based upon alleged tradename and trade-mark infringement, and upon unfair competition.

■ I think that the plaintiff's claim that the defendants do not have the right to use the name "Browning King & Company" or the various trade-marks which had been previously used by the predecessor Delaware corporation, is not supported by the evidence. I have found as a fact that the defendants did acquire the right to use the above mentioned tradename and trade-marks by purchase as outlined in finding of fact No. 16, above.

A more difficult question is raised by the plaintiff's contention that the defendant, through its advertising methods and sales policies, is guilty of unfair competition. On the basis of the evidence adduced at the trial of this cause, I think that the question of whether competition actually exists between the plaintiff and the defendants is an extremely close question. The number of the plaintiff's charge account customers who reside in Pennsylvania is insignificant compared with the total number of plaintiff's charge customers. An attempt to estimate the number of plaintiff's cash customers who are derived from the Pennsylvania area would be pure speculation.

Even though the plaintiff has not established the fact of direct competition between itself and the defendants, I think that under the modern view of the theory

of what is called "unfair competition" the plaintiff may nevertheless be entitled to relief because the defendants' conduct would tend to injure the plaintiff, and to deceive and confuse the purchasing public. See Nims, Unfair Competition and Trade-Marks, 4th Ed., § 374; Callman, "Unfair Competition Without Competition?" 95 U. of Pa. Law Review No. 4, page 443.

I think that it has been established by the evidence that certain of the advertising and merchandising policies pursued by the defendants have a natural tendency to mislead the purchasing public. I think it altogether reasonable that the purchasing public would gather from the defendants' advertising that the factory which produces the garments which are sold at retail in the various Browning, King stores in the East is located in Philadelphia, and that because the factory is located here the local customer is privileged to buy these garments at Philadelphia "factory showrooms" at prices substantially lower than those which are charged in the Browning, King stores in other states.

The defendants have gone to great lengths in an attempt to establish that they are actually clothing manufacturers in the eyes of the clothing trade. However, we are not primarily interested in whether the clothing trade recognizes the defendants as manufacturers; we are interested rather in the impression which is likely to be created in the minds of the purchasing public by the defendants' use of the phrase "factory showrooms" in their advertising, bearing in mind that there are Browning, King stores in other states which concededly are not supplied with their clothing by the defendants.

It seems to me that the natural impression created by the defendants' advertising which incorporated references to "nationally advertised prices" and "factory showroom prices," taking into consideration the existence of other Browning, King stores in adjoining states, would be that the merchandise offered by the defendants is the same merchandise which is offered in other Browning, King stores. This, I think, is tantamount to a "passing off" of the defendants' merchandise as the same merchandise offered by others, which is of itself certainly an injury to the plaintiff.

The defendants' adoption and use of the trade-mark "Windsor Hall" as a designation for a line of its clothing is, I think, a tacit recognition by the defendants that at least some members of the purchasing public to whom its wares are offered are familiar with the plaintiff's stores and lines of clothing. I think that the defendants' adoption of this trade-mark can be adequately explained on no other grounds save that the defendants have attempted to imitate the plaintiff's "Windsor House" trade-mark and to trade upon the value of that mark. The explanation offered by the defendant A. Benjamin Wilkes as to how he happened to adopt "Windsor Hall" was most unconvincing.

It is undoubtedly true that the circumstances under which both the plaintiff and the defendants acquired the right to use the Browning, King trade-name and trade-marks would naturally engender a certain amount of confusion among the purchasing public as to the ownership of the various Browning, King stores, and the origin of the merchandise offered for sale therein. I think that the fact that confusion is inherent in the parties' relationship provides perhaps an even greater reason for the Court to prevent one of the parties from compounding such confusion as already exists by misleading advertising, and by adopting and using a trade-mark which is deceptively similar to one which had been previously adopted and used by the other.

## Conclusions of Law.

1. This Court has jurisdiction of the subject matter and the parties to this action.

2. Defendants are entitled to use the name "Browning King" and the trade-marks "Challenger," "Conqueror," the triangle containing the letters "B. K. & Co.," and the house insignia in connection with their business.

3. The defendants' use of the name "Windsor Hall" is an infringement of the plaintiff's trademark "Windsor House."

4. A decree may be submitted, enjoining and restraining the defendants,

and all persons acting under their authority, or in concert with them, from

(a) Using, in connection with the sale of clothing, the name "Windsor Hall," or any name or mark similar thereto or suggestive thereof;

(b) Representing, either actively or passively, by conduct or otherwise, that there is any connection between the defendants' stores and those of the plaintiff;

(c) Representing, by any means whatsoever, that their stores are "factory showrooms";

(d) Representing, through advertising, displays, or sales tickets or price tags, or by any other means, that the prices charged for their merchandise represent a price lower than that charged at any other place for the same merchandise.

(e) Costs of this action shall be divided between the plaintiff and defendants.